Isaiah Scott BOONES, Appellant

v.

The STATE of Texas, Appellee.

No. 06–04–00111–CR.

Court of Appeals of Texas,
Texarkana.

Submitted March 30, 2005.

Decided June 6, 2005.

Larry W. Fields, Carthage, for appellant.

Danny Buck Davidson, District Attorney, Carthage, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Isaiah Scott Boones appeals from his conviction for aggravated assault with a deadly weapon. Following a jury trial, Boones pled true to the enhancements for two prior felony convictions. The trial court sentenced Boones to eighty years' imprisonment consistent with the jury's assessment. On appeal, Boones argues the trial court erred by 1) failing to dismiss the entire array after sustaining a *Batson* challenge, 2) excluding a qualified juror from serving as the alternate juror after returning a challenged juror to the array, and 3) failing to correctly instruct the jury concerning parole. Because the trial court's remedy to the *Batson* challenge was not error, because any error concerning the alternate juror was harmless, and because Boones has failed to

show the parole instruction resulted in egregious harm, we affirm.

**1) The Trial Court Did Not Err In Failing To Dismiss the Entire Array**

In his first point of error, Boones contends Article 35.261 of the Code of Criminal Procedure required the trial court to call a new array once it found that a juror had been struck from the jury due to his race. *See* TEX.CODE CRIM. PROC. ANN. art. 35.261 (Vernon 1989). Boones argues the trial court erred by reinstating the juror rather than calling a new array.

During voir dire, the State used its peremptory strikes to strike six of the eight African–American jurors within strike range. Boones objected based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State provided reasons for striking each of the six jurors. The only reason the State provided for striking juror Larry Tyrone Harris, however, was that Harris failed to completely fill out his juror questionnaire. The defense pointed out that, because Harris stated he was single, the only sections not filled in were the occupation and work telephone number. Harris did list an employer. The defense also pointed out there were other jurors, not African–American, who also failed to fill out their questionnaires completely and who were not struck. The State initially said the failure to complete the questionnaire was the only reason for striking Harris. After reviewing the questionnaire, the trial court asked the State if it had any additional reasons for striking Harris. The State responded there was a warrant for assault that was recalled on a Larry Harris and "we think that it was him." The trial court found that the State provided race-neutral explanations for all the strikes except Harris and ordered that Harris be reinstated on the jury panel. Boones did not request the trial court to dismiss the

panel and call a new array, nor did Boones object to the trial court's failure to dismiss the array pursuant to Article 35.261.

 A party is prohibited under the Equal Protection Clause from using peremptory challenges to exclude otherwise qualified and unbiased persons from a jury solely on the basis of their race. *Id.* at 88, 106 S.Ct. 1712. The Texas Legislature has codified the *Batson* rule in TEX.CODE CRIM. PROC. ANN. art. 35.261. A *Batson* challenge consists of three steps. *Ford v. State*, 1 S.W.3d 691, 693–94 (Tex.Crim.App.1999) (citing *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). First, the party challenging the strikes must make a prima facie case of discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. *Batson*, 476 U.S. at 93–94, 106 S.Ct. 1712. The burden then shifts to the proponent of the strike to make a reasonable race-neutral explanation for the strike. *Id.; Williams v. State*, 937 S.W.2d 479, 485 (Tex.Crim.App.1996). As long as no discriminatory intent is inherent in the explanation given, the explanation need not be persuasive or even plausible. *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *Williams*, 937 S.W.2d at 485. Third, if the proponent of the strike produces a race-neutral reason for the strike, the party making the challenge shoulders the burden of proving intentional discrimination. *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *Williams*, 937 S.W.2d at 485. "At this stage, 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" *Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (citing *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769). The trial court must determine whether the party making the challenge carried the burden of persuasion by proving purposeful discrimination. *Mil-*

*ler–El*, 537 U.S. at 339, 123 S.Ct. 1029; *Purkett*, 514 U.S. at 767, 115 S.Ct. 1769. In this case, the trial court found the State improperly exercised a peremptory challenge on Harris. The issue raised in this case is whether the trial court's remedy was appropriate.

■ The United States Supreme Court explicitly declined to instruct courts as to the appropriate remedy when a juror is struck due to race. *Batson*, 476 U.S. at 99, 106 S.Ct. 1712. After the Supreme Court's decision in *Batson*, the Texas Legislature enacted Article 35.261, which provides only one remedy—dismissal of the entire panel. *See* TEX.CODE CRIM. PROC. ANN. art. 35.261. That article provides, "If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case." TEX. CODE CRIM. PROC. ANN. art. 35.261(b). The Texas Court of Criminal Appeals has since noted that the remedy provided for by Article 35.261 "may be unconstitutionally restrictive." *State ex rel. Curry v. Bowman*, 885 S.W.2d 421, 424 (Tex.Crim.App. 1993). The court reasoned that dismissing the entire array is "not a just and reasonable vindication of a prospective juror's right" and held that the trial court "may fashion a remedy in its discretion consistent with *Batson* and its progeny." *Id.* at 425. In *Bowman*, the Texas Court of Criminal Appeals held that the decision to reinstate the excluded veniremembers to the jury was an acceptable remedy. *Id.* As in this case, the defendant in *Bowman* did not expressly assert any statutory rights. *Id.* "[T]he remedy prescribed by article 35.261 is not exclusive" and "a trial court is authorized to remedy a *Batson* error by reinstating the excluded venire member to the trial jury." *Craig v. State*, 82 S.W.3d 451, 453 n. 1 (Tex.App.-Austin 2002, pet. ref'd). The trial court did not abuse its discretion by reinstating the excluded potential juror to the jury. We overrule Boones' first point of error.

### 2) Any Error in the Selection of the Alternate Juror Was Harmless

■ Boones contends the trial court erred by not designating Randy Graves as the alternate juror instead of Dena Holmes. When the trial court reinstated Harris, the alternate juror was not changed. Graves, who had previously been the twelfth juror and was now the thirteenth potential juror, was not called as the alternate. Instead, Dena Holmes, who had been designated the alternate juror before Harris was reinstated, was still designated as the alternate juror. Boones argues that the trial court erred by not changing the alternative juror and that its actions, in effect, gave the State an extra peremptory challenge.

Boones' argument essentially challenges the procedure used by the trial court in selecting the alternate juror. The trial court used a different procedure other than simply accepting the thirteenth potential juror as the alternate juror. This procedure was likely motivated by the requirements of the Government Code in selecting an alternate juror. Section 62.020(e) of the Government Code grants an additional peremptory strike if one alternate is selected, but it explicitly limits the use of this additional strike to the selection of the alternate juror. TEX. GOV'T CODE ANN. § 62.020(e) (Vernon 2005). Further, the Government Code prohibits the use of other peremptory challenges allowed by law or by rule against an alternate juror. *Id.* Section 62.020(e) provides:

Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law or by rule if one or two alternate jurors are to be impaneled. Each side is entitled to two peremptory

challenges in addition to those otherwise allowed by law or by rule if three or four alternate jurors are to be impaneled. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by law or by rule may not be used against an alternate juror. *Id.* The additional peremptory strikes and the limitations on which peremptory strikes may be used to select the alternate juror likely motivated the trial court to follow the procedure that it did.

The trial court calculated the potential strike range for the jury panel and then designated the next three jurors on the list as the permissible range for alternates. First, the trial court determined the last possible potential juror who could serve on the jury. Because one potential juror was excused and each side had ten peremptory strikes, the last possible juror who could serve on the jury was the thirty-third potential juror. The trial court then designated the next three potential jurors as the range where the parties could exercise their one additional peremptory challenge. Because the range of alternate jurors was separate from the range of jurors eligible for the jury, the reinstatement of Harris did not affect the designation of Holmes as the alternate. Although the State argues this method is the only logical procedure that will comply with the Government Code's provisions, it is not necessary we reach that conclusion in this case.

Even if the trial court's procedure was in error, Boones has failed to show the alleged error resulted in harm. The alternate juror was dismissed without serving on the jury. Therefore, the error, if any, was clearly harmless. *See* TEX.R.APP. P. 44.2. We overrule Boones' second point of error.

### 3) No Egregious Harm Shown Concerning the Parole Instruction

Boones contends in his third point of error the trial court erred in giving the jury an instruction concerning parole law which differs from the standard parole instruction contained in Article 37.07 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1) (Vernon Supp.2004–2005). According to Boones, the trial court committed reversible error because the instruction is mandatory.

■ The instruction given to the jury differed from the language required by the rule. Specifically, the instruction omitted part of the discussion about good conduct time. The charge required by Article 37.07, § 4(a) reads as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

. . . .

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two

years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp.2004–2005). "[T]he over-all purpose of the instruction is to inform jurors of these concepts as a general proposition, but to prohibit the jury from using its notions of parole or 'good conduct time' in any calculus in assessing the appropriate punishment." *Luquis v. State,* 72 S.W.3d 355, 360 (Tex.Crim.App.2002). The Texas Court of Criminal Appeals has warned against deviating from the language of the statute. *See id.* at 363. The trial court has a mandatory duty to instruct the jury with the statutory charge. *See id.* The charge given to the jury in this case omitted the instruction concerning the accrual of good conduct time by a prisoner. However, the charge did inform the jury that it was not permitted to consider the extent that good conduct time may be awarded to Boones. The charge given to the jury reads in pertinent part:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will be [sic] not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty (30) years,

whichever is less, without the consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted.

. . . .

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

We review errors in the jury charge using the standard set out in *Almanza. Brown v. State,* 122 S.W.3d 794, 803 (Tex.Crim.App.2003); *see Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). The standard of review for errors in the jury charge depends on whether the defendant properly objected. *Almanza,* 686 S.W.2d at 171. If a proper objection was raised, reversal is required if the error is "calculated to injure the rights of defendant." *Id.* In other words, an error that has been properly preserved is reversible unless it is harmless. *Id.* If a defendant does not object to the charge, reversal is required only if the harm is so egregious the defendant has not had a fair and impartial trial. *Rudd v. State,* 921 S.W.2d 370, 373 (Tex. App.-Texarkana 1996, pet. ref'd).

While Boones did object to the charge, his objection concerned the inclusion of an instruction on parole law, rather than an objection to the content of the instruction. To preserve error for appellate review, the complaining party must make a timely, specific objection explaining the grounds for the objection, if the grounds are not apparent from the context. *Dixon v. State,* 2 S.W.3d 263, 265 (Tex.Crim.App.1998). The issue raised on appeal must correspond to the objection made at trial. *Id.* At trial, Boones made

the following objection: "Judge, other than a general objection to the Charge, a specific one, that's the inclusion of the parole law, we don't have any other objections at this time." Although "no technical considerations or form of words" are necessary, the defendant is required to "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim.App.1992). Boones' objection is insufficient for the trial court to clearly understand he is objecting to the charge based on its deviation from the statutory language. Because the defense did not make a specific objection which corresponds to the complaint on appeal, we will review the alleged charge error under the egregious harm standard.

■ Where there has been no objection, we will reverse the cause only if an appellant has shown the error caused egregious harm. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994); *Blumenstetter v. State*, 135 S.W.3d 234, 240 (Tex.App.-Texarkana 2004, no pet.). Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991); *Hall v. State*, 937 S.W.2d 580, 583 (Tex.App.-Texarkana 1996, pet. ref'd). We determine harm in

light of the entire jury charge, the state of the evidence, including contested issues and the weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record as a whole. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App.1998); *Rudd*, 921 S.W.2d at 373. The purpose is to illuminate the actual, not just the theoretical, harm to the accused. *Hines v. State*, 978 S.W.2d 169, 175 (Tex.App.-Texarkana 1998, no pet.); *Rudd*, 921 S.W.2d at 373.

■ If it was error for the trial court to make these changes in the instruction required by Article 37.07, the error did not result in egregious harm to Boones. In this case, the instruction given to the jury simply omitted the explanation of good conduct time. In *Bolden v. State*, the First Court of Appeals held no harm had been shown when an instruction omitted all reference to "good conduct time." 73 S.W.3d 428, 433–34 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). As the First court stated, the instruction was intended to increase the sentences assessed by juries and does not benefit the defendant.[1] The inclusion of the instruction concerning "good conduct time" probably would not have benefitted Boones. Further, unlike the instruction in *Bolden*, which completely omitted any reference to "good conduct time," the instruction in this case informed the jury that it was not to consider the effect of any "good conduct time" in assessing the sentence. *See id.* at 433. Because we assume the jury follows the trial court's instruction, we must assume the

---

1. *Id.* Indeed, the wisdom of the statutory charge has been questioned due to its capacity to mislead the jury in cases, such as this, where good conduct time the defendant earns will not accelerate his or her eligibility for release on parole or affect his or her eligibility for release to mandatory supervision. *See Luquis*, 72 S.W.3d at 362; *Owen v. State*, No. 06–03–00051–CR, 2004 WL 299856, at *2 n. 1, 2004 Tex.App. LEXIS 1556, at *4 n. 1 (Tex.App.-Texarkana Feb.18, 2004, pet. ref'd) (not designated for publication); *Rogers v. State*, 87 S.W.3d 779, 783–85 (Tex.App.-Texarkana 2002, pet. ref'd) (Ross., J., concurring); *see also* TEX. GOV'T CODE ANN. § 508.145(d) (Vernon 2004).

jury did not consider the effect of the "good conduct time" on the defendant. *See Luquis,* 72 S.W.3d at 366. Boones has not directed us to any place in the record showing that the jury discussed, considered, or attempted to apply what it was told about "good conduct time" or showing that the jury was confused about the possible application of "good conduct time." Boones has not shown the instruction resulted in egregious harm. We overrule his final point of error.

### Summary

The trial court did not err in reinstating a juror after sustaining the *Batson* challenge to one of the struck jurors rather than dismissing the entire array. Boones did not object or request the dismissal of the entire panel or invoke any statutory right to have the entire array dismissed. The trial court did not abuse its discretion by remedying the *Batson* violation by reinstating the struck juror. Even if the trial court's procedure in selecting the alternate juror was error, any such error was harmless. Finally, Boones has failed to show the parole instruction resulted in egregious harm.

We affirm the judgment.